```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                   OCALA DIVISION

IN RE: ENGLE CASES
     Case No. 3:09-cv-10000

EVONNE DAVIS V. R.J. REYNOLDS TOBACCO COMPANY ET AL.
     Case No. 3:09-cv-11447
```

June 25, 2014

OPINION AND ORDER

Rakoff, D.J.[1]

Jury deliberation is currently underway in the above-captioned case, in which plaintiff Evonne Davis sues defendants Philip Morris USA, Inc. and R.J. Reynolds Tobacco Company for injuries that allegedly resulted from defendants' tortious conduct. The Court presumes familiarity with the expansive record and procedural history, both in the instant case and in the original *Engle* class action that serves as a partial basis for plaintiff's claims in this case.

A crucial issue in this case is whether the plaintiff is a member of the *Engle* class, which would permit her to rely upon the *Engle* findings to establish a number of elements of her claims. The *Engle* class, as approved by the Florida Supreme Court, is defined in relevant part as all Florida citizens and residents "who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1256 (Fla. 2006) ("*Engle III*"). That class definition contains the term

---

[1] Senior U.S. District Judge, S.D.N.Y., sitting by designation.

1

"addiction," but does not define it any further.

At the outset of trial in this case, the Court requested submissions from the parties on proposed definitions for the term "addiction." *See* Trial Transcript ("TT"), Vol. 1, June 16, 2014, at 5:23-7:3. Plaintiff then proposed two potential definitions, stating a preference for the definition used by National Institute on Drug Abuse. *See* Plaintiff's Submission Defining "Addiction," ECF No. 71, at 1. Defendants strongly objected to the Court's defining the term at all, but, failing that, offered two other definitions of addiction, stating a preference for the definition used by Diagnostic and Statistical Manual of Mental Disorders ("DSM"), Fifth Edition and the DSM, Fourth Edition, text revision. *See* Defendants' Memorandum of Law in Opposition to Instructing the Jury on the Definition of Addiction, ECF No. 70, at 1-2, 8-10.

The Court, after hearing further argument on June 17, 2014, ruled from the bench that it would employ, not the technical (and conflicting) definitions favored by the parties, but the applicable plain English dictionary definition set forth in the Merriam-Webster's Dictionary. *See* TT, Vol. 2, June 17, 2014, at 6:15-:16, 8:14-:18. That definition is: "a compulsive need for and use of a habit-forming substance (as heroin, nicotine, or alcohol) characterized by tolerance and by well-defined physiological symptoms upon withdrawal." With the exception of the deletion of the parenthetical remark, the Court adopted this definition and incorporated it in its instructions to the jury given on June 25, 2014. This Opinion and Order reconfirms that ruling and states the reasons for it.

The Court begins by recognizing that the ultimate determination

2

of whether, on the facts of this case, Ms. Davis is a member of the *Engle* class is a question of fact that is solely within the province of the jury. However, the scope and meaning of the class definition is an antecedent issue that must be resolved by this Court as a matter of law. As the parties' own submissions attest, and as the history of various *Engle* progeny cases further corroborates, "addiction" is a word of varying meanings and the scope of the class can be significantly affected by which meaning is employed. This is not a matter that can be left to the vagaries of unguided jury speculation. Rather, the jury needs to know what the class definition approved by the Florida Supreme Court in the *Engle III* decision means, in order that they can apply that definition to the facts of the case as they find them.

A jury cannot interpret what the Florida Supreme Court meant by "addiction" any more than it can interpret the scope of a statute, a judgment, a consent decree, or even the claims of a patent. *See, e.g., United States v. ITT Continental Baking Co.*, 420 U.S. 223, 233-34 (1975) (interpreting scope of a previously issued consent decree as a matter of law); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) (interpreting scope of a patent's claims as a matter of law). Furthermore, the scope of class membership is critical to determining the *res judicata* effect of the prior *Engle* proceedings — a determination that is also clearly a question of law, as recently confirmed by the Florida Supreme Court in *Philip Morris USA, Inc. v. Douglas*. *See* 110 So. 3d 419, 427-30 (Fla. 2013).

Even in the prior *Engle* progeny cases, courts have treated as a

matter of law the definition and scope of other terms in the class definition. Most prominently, courts have repeatedly defined, as a matter of law, the meaning of the term "caused" in the class definition. *See, e.g., Reider v. Philip Morris USA, Inc.*, No. 3:09-cv-10465, Jury Instructions (ECF No. 262), at 12 (M.D. Fla. Feb. 25, 2014); *Deshaies v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-11080, Jury Instructions (ECF No. 128), at 8-9 (M.D. Fla. Feb. 3, 2014). Here, neither side contests that the term "caused" requires the Court's definition and should not simply be left to the guesswork of a jury. *See* Notice of Filing Proposed Preliminary and Phase I Instructions and Phase I Verdict Form, ECF No. 57, Ex. B, at 6; Notice of Filing Defendants' Proposed Jury Instructions and Verdict Forms, ECF No. 52, Ex. 2, at 19. Indeed, both sides have agreed that it was so clearly a matter for legal definition that to avoid confusion, it should be referred to in the Court's instructions to the jury as "legal cause."

The Court is mindful, of course, that "addiction" appears not to have been defined by the courts in prior *Engle* progeny cases; but as nearly as the Court can tell, this was simply because the issue was not raised by the parties in the great majority of such cases. Such strategic silence, however, does not excuse this Court from ruling on the issue now that it has been raised and briefed. More fundamentally, regardless of the reasons that other distinguished judges may have had for not defining the term, this Court cannot permit a term go undefined when it has clear legal significance based on a Florida Supreme Court decision, particularly when the term determines who can benefit from *res judicata* based on a previous class action. *See Engle III*, 945 So. 2d at 1254.

4

In the only prior *Engle* case brought to the Court's attention where the issue was clearly raised, the trial judge did not define "addiction" because there is "no commonly accepted definition of the term addiction, much less as it relates to cigarettes in the law." Trial Tr., May 12, 2014, *Starbuck v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-13250-WGY-HTS (M.D. Fla.), at 136-37. Most respectfully, this is precisely why the term must be defined, for otherwise a jury gets to pick and choose whatever definition it may prefer, and thereby to silently determine the scope of the class without any legal guidance. Rather than the rule of law, this is the rule of chance, predilection, and guesswork. Jurors should not act like Humpty Dumpty, and a trial should not be an excursion into Wonderland.[2]

Defendants also cite a few Florida cases in other contexts in which, they argue, terms similar to "addiction" were not defined by the trial court and were instead left to the jury's definition. However, none of these cases is analogous to this one. Thus, in *State Farm Fire and Casualty, Co. v. De Londono*, the Florida Third District Court of Appeals permitted a jury to determine its own definition of an ambiguous insurance policy term. *See* 511 So. 2d 604, 605 (Fla. 3d DCA 1987). But that factual determination is totally different from determining what the Florida Supreme Court meant in its legal definition of the *Engle* class, which itself was a determination of law, much more analogous to a statutory text or judicial judgment. Nor is this case like *Derius v. Allstate Indem. Co.*, 723 So. 2d 271 (Fla.

---

[2] "'When *I* use a word,' Humpty Dumpty said in rather a scornful tone, 'it means just what I choose it to mean — neither more nor less.'" Lewis Carroll, *Through the Looking Glass* 123 (1897).

5

4th DCA 1998), in which the Florida Fourth Circuit Court of Appeals left to the jury the application to the facts of the term "medically necessary" without further defining that term. The term "necessary" has a common understanding that is well within the grasp of a jury. Here, by contrast, the term "addiction" has so many meanings, some of them highly technical, that without the aid of the Court's interpretation, the jury will be left without meaningful guidance as to the scope of a term that has legal significance beyond the jury's grasp.

Having considered and rejected these and the various other arguments raised by the defendants for not defining "addiction," the Court turns to determining its meaning, as used by the Supreme Court of Florida in defining the scope of the *Engle* class. Since that Court — well aware from the underlying litigation of the competing, and contrary, technical definitions of "addiction" — did not define the term by reference to any these "terms of art," it is clear that the Supreme Court intended to give "addiction" that ordinary dictionary definition most applicable to the context of this class of cases, *i.e.*, cases concerned with nicotine addiction of cigarettes. Only one of the definitions of "addiction" in Webster's expressly references nicotine, and that is the one the Court adopted here. The only change was to delete the parenthetical reference to "heroin, nicotine, or alcohol," so as not to prejudice the jury.

Accordingly, the Court has incorporated into its instructions to the jury in this case, and hereby reconfirms, that the term "addiction" in the *Engle* class definition means "a compulsive need for, and use of, a habit-forming substance, characterized by tolerance

and by well-defined physiological symptoms upon withdrawal."

SO ORDERED.

_____
JED S. RAKOFF
DISTRICT JUDGE